16

Defendants admit and stipulate Consideration of Rival prison gang members when assigning and separating rival prison gangs into housing area (Quad) for housing placement. Plaintiffs argue this housing Practice employs Suspect Class based Classification scheme admitted by Defendants and therefore the housing practice is suspect upon its face.

In Pitts, the District of Columbia explicitly rejected the application of Turner in the Context of a Suspect Class equal protection Claim. Pitts 866 F.2d at 1453. Although the Claim involved issues that did not directly implicate either prison security or control of inmates behavior, id. at 1454, the Court specifically noted that the Supreme Court "has Commanded that Suspect Classifications demand the Courts special attention" Id at 1454-55. The Pitts Court also noted that the fact that an equal protection Claim "Charges invidiousness rather than an unwarranted interference with Constitutionally secured liberties" was relevant to the level of Scrutiny it applied. Id. at 1455 quoting Johnson v. California 336 F.3d 1117 at 1123 (C.A.9 2003)

Plaintiffs argue that intent and impact are not required to prove since defendants admit Considering rival prison gang Membership when assigning rival gang members there housing Area (Quad) see Walker v. Gomez, 370 F.3d 969 at 974. "the Policy was suspect on its face... Plaintiff did not need to Prove discriminatory intent or impact" quoting Walker at 974.

These cited Case laws involve racial Classifications but Plaintiffs believe that a Class based Classification scheme used in the Challenged housing Practice encompasses Equal Protection laws for housing practice as well as violation of the 8th Amendment. Plaintiffs argue that impact is so Obviously dangers and the Practice is far from Nuetral that intent is not far behind when Considering all Circumstances and situations and facts surrounding the Challenged housing practice.

A Jury certainly could find that this practice offends even the most elementary notions of common decency and dignity as well as a violation of equal protection laws and the 8th amendment, it presents a serious risk of harm to prisoners and the general public.

Eventually these gang members will either be paroled or discharged from prison and the general public will be the ones at a significant risk of harm from them. The general public has no idea what these types of housing practices are creating for them and misdeeds.

The potential for harm and a substantial risk of serious harm from the consequences of placing a non-gang member in this situation and circumstances without warning is most certain to result in harm and violence. Plaintiffs argue it was a most likely to result in known harm scenerio in subjecting plaintiff to what they claim as an unconstitutional practice.

If Plaintiffs had been offered protective custody before being placed in the housing area after being informed as to what the housing area contained or even asked if they get along with a bunch of rival gang members and then plaintiffs could make an informed decision and would have refused the housing assignment and place themselves in protective custody.

Plaintiffs argue that how did defendants know or not know that plaintiffs even though they are non-gang members are still not rival towards rival prison gang and this is where plaintiffs also argue that the lack of clear written rules and inclusive classification and screening are major defects and the absence of this is a policy of deliberate indifference and callous indifference.

Plaintiffs argue statements regarding the use of the housing practice are general and far too broad to provide any specific guidance in the handling of the housing practice these present issues that suffer from the

18

the lack of authoritive written rules, contradictory policies and confusion regarding a subject of this magnitude are intolerable, there are no specific guidelines regarding application of the housing practice in different situations.

These major defects gave Carte Blanche to Supervisors and Guards to use this housing practice arbitrarily against prisoners (Non-Gang Members) thus inviting abuse against inmates.

Prison administrators failure to train adequately as well as provide clear written rules and failure to supervise and monitor the housing practice significantly increases the potential for harm and the potential the practice will be misused, this substantially contributed to the development and persistence of the pattern of injuries terror, extortion, coercion, threats, beatings, sex assault upon an identifiable group of prisoners and plaintiff belong to that group who are Non-Gang Members.

The use of the dangerous housing practice and the lack of adequate systems to control it are not simply the result of inadvertence, genuine mistakes in judgement or good faith efforts gone awry.

Rather they are attributable not only to defendants deliberate indifference but also callous indifference and their knowing willingness that harm occur, this dangerous housing practice is open, acknowledged, tolerated and expressly approved.

This practice strikes as a ritual of inflicting punishment why in the world would you over and over again do all of these things for years

Most significantly violence resulted time and time again in significant injuries many which are indications of physical beatings.

Not only can this dangerous housing practice destroy or seriously injure the prisoners it is directed against but it can do enormous damage to the spirit and morale of that inmate, and inmate body and staff.

page 18 of 28

19

Failure to provide clear written rules and screening procedure and adequate training for the housing practice created an atmosphere of tolerance in the violence arising out of the housing practice and a tolerance of misuse in the housing practice as well as tolerance in gang targeting and related injuries, which enhanced the risk that such incidence would occur. Administrators, Warden, Deputy Wardens, Chief of Security, Supervising Failure to provide clear written rules and screening procedures in the face of gang related violence, beatings, terror, sex assault, coercion and gang recruitment demonstrates deliberate indifference and callous indifference and invited abuse in the application of the challenged housing practice.

The actions and omissions at issue did not occur in a time pressured context but rather over an extended period that allowed for ample reflection, calculation and fore thought.

The frequency of beatings, terror, threats, sex assault upon an identifiable group of prisoners at the hands of separated concentrated prison gang members and leaders in the use of the challenged housing practice and the high probability for gang targeting and recruitment in using this housing practice should have precipitated a thorough meaningful investigation and remedie. These facts were obvious red flags indicating a serious meaningful review and a safe solution was warranted.

The glaring deficiencies in all the above areas convinces that such deficiencies are not accidental but the result of deliberate indifference.

Prison administrators, warden, deputy warden, chief of security, Supervising indifference to brutal behavior perpetrated by concentrations of separated rival prison gang members could show and would show affirmative management policy and practice and message to the rest of the inmate body (Non-gang) that if you do not behave you will experience sheer pain and suffering and terror at the hands of prison gangs when you come to Halawa prison.

page 19 of 28

Defendants document on Operating principles on Safety are not convincing in the absence of clear written policies for use in the housing practice as well as the absence of Screening to determine compatibility with gang members who have already demonstrated a propensity for Violence.

The absence of clear written rules concerning the housing practice and deficiencies in certain written policies Closed Custody, Separatee issue, Special Management inmates are symptomatic of a more general disregard for the importance of written policies such as DOPS Operating principles, and DOPS policy concerning the right to Safe Custody, thus creating a Schism between the prison written policies and its actual operating procedure.

However written policies in place are exceedingly general and to Blend them together further Confuses the whole process in the Creation of a unwritten policy thus failing to provide any meanful guidance regarding the use of the housing practice.

The mixing of prisoners who have demonstrated a propensity for Violence in prison with those inmates who have not, has been known to be exposer to a known risk of harm in many case law. Now take a Concentration of rival gang members who have demonstrated a propensity for Violence and then take an inmate a Non-gang member and known gang target who has never demonstrated a propensity for Violence and place him in that Concentration of Violent gang members this would enhance the known risk of serious harm and potential for serious harm. Moreover this practice does not square with the evolving standards of decency that mark the progress of a Maturing Society. Does society want this? I think not! eventually Society will bear the Burden of a risk of serious harm when these newly recruited prison gang members discharge from their sentences.

This practice is a danger to prisoners and society and since Society is evolving what may have been tolerable in the past may now be Considered reprehensible.

Similiar elements are shown in Lucas v. Thurman and walsh v. Mellas page 20 of 28

21

Defendants point to protective custody as an alternative to the challenged housing practice and that a inmate must live in with separated rival prison gangs until he is beaten, threatened, sexually assaulted and then consideration are made if serious enough that would warrant placement into protective custody.

Plaintiffs argue considering all circumstances and violence occurring in the housing practice the first and foremost consideration would be to offer protective custody before housing assignment, defendants never gave reasons why this is not done or why it would be impossible or even difficult or for that matter why it would be impossible or difficult to separate Non-Gang from Gang members in the housing practice when in fact defendants separated rival prison gangs. Defendants never acknowledged there was a problem with the housing practice.

Plaintiffs show in Case Law an identifiable group of prisoners for whom the risk of assault is a serious problem, is recognized especially prisoners targeted by gangs.

In Walsh v. Mellas 837 F.2d 789 at 790 #2 Criminal Law "Failure of prison officials to establish procedure for screening files of inmates assigned to ...... area to ensure some level of compatibility ..... supported conclusion that officials exhibited deliberate indifference to prisoners right to security and constituted "punishment" within meaning of eighth amendment. Officials knew that prisoner was member of identifiable group of prisoners for whom risk of assault was serious problem and despite their awareness of the general risk of gang related violence against prisoners targeted by gangs, officials housed gang member in ..... area along with prisoner. (7th Cir 1988)

In Walsh v. Mellas Screening and the absence of it was the major defect in determining compatibility for an identifiable group of prisoners who are to be housed with gang members, thus incurring liability and showing deliberate indifference.

page 21 of 28

22

this housing practice is far from Neutral, the disadvantage to Non-gang Members is Obvious in light of separated rival gangs were attacking Non-gang inmates, Not the other way around.

Plaintiffs Claim that a "Suspect Class based Classification scheme" is used in Creating the housing practice where some kind of determination or Method was used to identify rival prison gang Members and separate them in Concentrations in Certain Areas of HCF.

This is admitted by Defendants and stipulated now with this admission of a Class based Classification scheme used in the housing practice.

"the Supreme Court" has commanded [that suspect classifications] demand the Courts special attention quoting Johnson V. Calif 336 F.3d 1117 at 1123 (CA9 2003)

Plaintiff Claim that the propensity for Violence that prison gangs demonstrated Caused defendants as a collective body to Classify and identify rival prison gangs and Separate them for their safety and protection,

also that Plaintiffs were denied safety and protection as well as separation from Concentrated Separated prison gangs belong to a single gang because Plaintiffs were not prison Gang Members or rival prison Gang Members.

When defendants separated rival prison gangs they created disparate classes of prisoners, gang and Non-gang. Prison gangs are an Organization of Violent inmates that work and function as one, where as the Newly arriving Non-gang Member is alone and unprepared to deal with a Concentration of separated rival prison Gang Members that he is thrown in with without any consideration for Compatibility safety or protection and to any reasonable person see this would and could see that this is a Obvious danger to a serious risk of harm to the Non-Gang Member placed in this Situation.

23

Plaintiffs claim and argue those Defendants who signed plaintiffs grievances acted with reckless disregard and a reckless indifference to plaintiffs and prisoners (Non-Gang Members), (identifiable group) personal security.

"and this conduct that is so wanton or reckless with respect to the "unjustified infliction of harm as is tantamount to a knowing willingness that it occur Whitley, 475 U.S. at 321, 106 S.Ct. at 1085, will also suffice to establish liability, because it is conduct equivalent to a deliberate choice" quoting Redman v. County of San Diego 942 F.2d 1435 at 1443 (9th Cir 1991)

"the Supreme Court has defined "Wanton" as follows "Wanton means reckless - without regard to the rights of others ...... Wantonly means causelessly, without restraint and in reckless disregard of the rights of others, wantonness is defined as a licentious act of one man towards the person of another, without regard to his rights, it has also been defined as the conscious failure by one charged with a duty to exercise due care and diligence to prevent an injury after the discovery of the peril, or under circumstances where he is charged with a knowledge of such peril, and being conscious of the inevitable or probable results of such a failure." quoting Redman at 1443. (As-1 note #10.)

Plaintiffs argue that it is here that under the circumstances that the knowledge of such peril and conscious of the inevitable or probable results of such failure come into play -

The knowledge is demonstrated in a "longstanding pervasive, well documented" history of Beatings, Coercion, prison gang recruitment, and gang targeting upon an "identifiable group of prisoners" who are (Non-Gang Members) and plaintiffs belong to that group.

24

This latter liability is not a form of vicarious liability. Rather, it is direct liability. Under direct liability. (quoting Redman at 1446 & 1447)

The requisite causal connection can be established by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury. Johnson v. Duffy 588 F.2d 740, 743-44 (9th Cir. 1978) quoting Redman at 1447.

Plaintiffs contend that these attacks and violence occurring within the challenged housing practice have gone on for years and that they are frequent and violent and that the targets of these frequent and violent attacks are prisoners who are (Non-Gang Members) and this violence occurring in the challenged housing practice is perpetrated by separated concentrated rival prison gang members and leaders belonging to a single gang.

Also the knowledge of the danger here is demonstrated by the signatures of those Defendants who signed Plaintiffs Grievances and their actual and constructive knowledge of a class based classification scheme, separation process, housing practice and the beatings, coercion, gang recruitment and gang targeting therein, their knowledge of this danger and peril of the inevitable or probable results of violence upon an identifiable group of prisoners is demonstrated by their signatures on Plaintiffs Grievances as well as years of many other Grievances from prisoners who were exposed to the dangerous housing practice and the conditions therein, again resulting in reckless disregard, reckless indifference and callous indifference in failing to implement safeguards before housing a Non-Gang Member in the challenged housing practice.

"If officials know or should know of particular vulnerability of inmate, then 14th Amendment imposes on them obligation not to act with reckless indifference to that vulnerability." U.S.C.A. Const Amend 14, quoting Redman 942 F.2d at 1435 (5. Constitutional Law). (1991)

25

"Condition of Confinement that is sufficiently harmful to inmates or otherwise reprehensible to civilized society will at some point yield to Constitutional constraints, even if the condition has some penological justification" U.S.C.A Const Amend 8  Madrid at [52] prisons 17(1)

There is no static test that determines whether Conditions of Confinement Constitute cruel and unusual punishment, and Court must assess whether the Conditions are such that they are Compatible with civilized standards of humanity and decency, which are not referenced to any fixed historical point but by the evolving standards of decency to mark the progress of a Maturing Society U.S.C.A. Const. Amend 8. Madrid at [45] Sentencing and Punishment 1532

Deliberate indifference occurs when prison officials knows that inmates face substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it, inmate is not required to show the prison official acted or failed to act believing that harm would actually befall inmate, and it is enough that the official acted or failed to act despite knowledge of substantial risk of serious harm. U.S.C.A Const Amend 8. Madrid at [76] Sentencing and Punishment

In determining whether officials are entitled to qualified immunity, absent binding precedent in its own circuit, appellate court looks to all available decisional law, including law of other Circuits and district courts circuit or Supreme Court would have reached same result to determine whether right alleged to be violated was clearly established. Osolinski v. Kane 92 Federal 3d Series 934 at 934 #4. (9th Cir 1996)

page 25 of 28

26

"For purpose of Qualified immunity, officials can still be on notice that their conduct violates established law even in novel factual circumstances, as notice does not require that facts of previous cases be materially or fundamentally similar to situation in question; rather, salient question is whether the state of the law at the time gives officials fair warning that their conduct is unconstitutional." Hope v. Pelzer 122 S.ct 2508 at 2509 #10, (2002)

"Clearly established" does not mean that the very action in question have previously been held unlawful rather it merely means that in light of pre-existing law, the unlawfulness of the officials conduct was reasonably and objectively apparent. Wilson v. Layne 526 U.S. 603, 615, 119 S.ct 1692, 143 L.ed 2d 818 (1999)

Qualified immunity is not intended to relieve government officials from responsibility of applying settled legal principles to new, but reasonably analagous situations.

The record in entire will show that prison officials utilized a dangerous discriminatory housing practice, not only in a good faith effort to restore and maintain order but also for the very purpose of inflicting punishment and pain and repeated pattern of injuries upon a suspect class of prisoners who are in fact non-gang members, non-gang affiliates. Plaintiffs claim Bad Faith.

Defendants have never withheld their approval because of dissatisfaction with some aspect of the housing practice

27

Reasons given by Defendants are for the most part Bare assertions and these General Statements to justify the Challenged housing practice does not give permission to use unbridled discreation and carte blanche to allow unconstitional exclusion and Arbitrary use against and upon an identifiable Group of prisoners (Non-Gang Members) and Plaintiffs, to deny them an equal Opportunity to participate in Class based Classification scheme Separation Policy, Practice Custom before housing assignments.

The Housing Practice allowed and has the great potential for impermissiable Group bias and allows and has great potential for discrimination upon an identifiable Group of Prisoners who are Non-Gang Members. This Arbitrary exclusion for Plaintiffs and Non Gang prisoners resulted in systemic exclusion and allowed and has the great potential for intentional exclusion. The selection system used to identify and Separate rival prison gangs employs a Suspect Class based Classification scheme that did not include Non-Gang Members and plaintiffs because they are not rival prison gang members this of its own admission encompasses Equal Protection Violations and 8th Amendment Violations.

The practice has inherent Opportunities to discriminate against a particular Class of prisoners (Non-Gang Members) the fact that Violence always occured upon Non-gang inmates at the hands of Concentrated Separated rival prison gang belonging to a single gang is of significance, the Frequency with which it occured is significant, the fact that Violence occuring in the housing practice is the result of gang targeting is significant, the fact there are no determinations, Screening, Classification for Non-gang inmates before housing assignment to determine Compatibility is significant, the proliferation of prison gang Members attributable to the housing practice is Significant, the danger the Housing practice represents to prisoners and the public is Substantial.

28

There is a strong public interest in the Courts resolving important precedental issues, a public interest that militates against a finding of mootness in cases presenting such issues - quoting Foster v. Carson 347 F.3d 742 at 747 (C.A. 9th OR 2003)

The State is not compelled to have classifications for prisoners nor for that matter is it compelled by the Federal Constitution to employ classifications for prisoners at all.

But if the State, DOPS and Defendants choose to employ prisoner classifications in housing practices it must ensure that its selection practices do not violate Federal Constitutional guarantees. It cannot secure a change in those Constitutional Standards nor immunize its class based selection and separation practices from these Standards.

Anthony Nesbit and William Kotis plaintiffs declare under the penalty of law that the declarations they present concerning the challenged housing practice are true and correct and based on personal knowledge and also personally interviewing inmates, guards and Grievance Specialist Bob Webb.

William Kotis

Respectfully Submitted

Date January 6th 2006
1/6/06

Anthony Nesbit
plaintiff pro se

page 28 of 28

Anthony Nesbit #A0060304 William Kotis
Tallahatchie Corrections
P.O. Box 388
Tutwiler, MS 38963
Plaintiffs pro se

# In the United States District Court
## for the District of Hawaii

| | |
|---|---|
| Anthony Nesbit<br>Plaintiff<br>Vs<br>Dept of Public Safety<br>State of Hawaii et al<br>Defendants | Civil No. 03-00455-SOM-KSC<br>Consolidated<br><br>Plaintiffs Separate and Concise<br>Statement of Facts in Opposition<br>to Defendants Motion for Summary<br>Judgement |
| William Kotis<br>Plaintiff<br>Vs<br>State of Hawaii Dept<br>of Public Safety et al<br>Defendants | Civil No. 04-00167-SOM-KSC<br>Consolidated |

## Plaintiffs Separate and Concise Statement of Facts in Opposition to Defendants Motion for Summary Judgement

Pursuant to Rule LR56.1 of the Local Rules of Practice for the United States District Court for the District of Hawaii, Plaintiffs Anthony Nesbit and William Kotis pro se submits there separate concise statement of material facts in opposition to Defendants Motion for Summary Judgement.

The facts and supporting evidence presented in the Defendants Separate Concise Statement of Material facts, where appropriate, plaintiff has indicated that facts relied upon by defendants are controverted, these are

followed by additional Material facts and Supporting evidence that plaintiffs introduce to demonstrate the existence of a Genuine issue of Material facts.

Plaintiffs response to Defendants Statement of Facts

| Facts | Evidentiary Support |
|---|---|
| 1. Disputed | Defendants Exhibits A, A, B |

---

Plaintiffs Statement of Facts in Opposition with Support Evidence.

| Facts | Evidentiary Support |
|---|---|
| 2. Exhaustion Grievances and other Grievances from plaintiffs Signatures on these grievances for Causal Connection and affirmative link in the Constitutional defective practice and Gang targeting occurring therein | Plaintiffs Group Exhibits A |
| 3. Declarations and other Grievances from other Non-Gang prisoners Victimized in the housing practices showing a pattern of Abuse and Violence against them resulting from Gang target. | Plaintiffs Exhibits B |
| 4. Plaintiffs letter to Dept of Accounting and General Services and letter to Civil Rights litigation div of Attorney General and reply letter for Causal Connection and affirmative link in Unconstitutional practice. | Plaintiffs Exhibits C |

Cont Plaintiff's Statement of Facts in Opposition cont. pg 2

| Facts | Evidentiary Support |
|---|---|
| 5. Draft letter to Deputy Director of Dept of Public Safety Frank Lopez for Causal Connection and Alternative Cure in the Constitutionally defective practice (this letter was mailed on or about 7/20/03 | Plaintiff's Exhibit D |
| 6. Defendant Monica Lortz Declaration showing a knowledge of serious harm and alternative to the challenged housing practice (more than a mere suspicion) | Plaintiff's Exhibit E |
| 7. Admission that the practice is "Sometimes" used against Non Gang inmates demonstrating Arbitrary use of practice against an identifiable group prisoners in a Class based Classification scheme Separation housing practice | Plaintiff's Exhibit F Defendants Stipulation of a class based classification scheme Separation policy used in housing practice |
| 8. Defendant Gary Kaplan Declaration excerpts from paragraph 6 and 9, showing the mixing of prisoners and plaintiff with no record of prison violence in with rival prison gangs who have demonstrated a propensity for violence in a Maximum Security/High Security prison facility housing Policy, practice Custom. | Plaintiff's Exhibit G |
| 9. Opposition to Gary Kaplans Declaration and Linda Sandin and Monica Lortz | Plaintiff Opposition to Gary Kaplan Declaration Exhibit H |

Respectfully Submitted

Date- January 6th 2005      Anthony Nesbit
1/6/06                      Plaintiff pro se