MARK J. BENNETT                 2672
Attorney General of Hawaii

CINDY S. INOUYE                 3968
JOHN M. CREGOR, JR.             3521
Deputy Attorneys General
Department of the Attorney
 General, State of Hawaii
425 Queen Street
Honolulu, Hawaii 96813
Telephone: (808) 586-1494
Facsimile:  (808) 586-1369
Email: John.M.Cregor@hawaii.gov

Attorney for Defendants

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ANTHONY NESBIT,<br><br>　　　　　　Plaintiff,<br>vs.<br><br>DEPARTMENT OF PUBLIC SAFETY, STATE OF HAWAI`I, et. al.<br><br>　　　　　　Defendants. | CIVIL NO. 03-00455 SOM-KSC (Consolidated)<br><br>**DEFENDANTS MONICA LORTZ AND CINDA SANDIN'S RESPONSES TO THE PLAINTIFFS' FIRST REQUEST FOR ANSWERS TO INTERROGATORIES TO DEFENDANTS** |
| WILLIAM KOTIS,<br><br>　　　　　　Plaintiff,<br>vs.<br><br>STATE OF HAWAII DEPT. OF PUBLIC SAFETY, et. al.<br><br>　　　　　　Defendants. | CIVIL NO. 04-00167 SOM-KSC (Consolidated) |

181722_1.DOC

## DEFENDANTS MONICA LORTZ AND CINDA SANDIN'S RESPONSES TO THE PLAINTIFFS' FIRST REQUEST FOR ANSWERS TO INTERROGATORIES TO DEFENDANTS

COME NOW DEFENDANTS **MONICA LORTZ and CINDA SANDIN**, by and through their attorneys, Mark J. Bennett, Attorney General of Hawaii, and Cindy S. Inouye and John M. Cregor, Jr., Deputy Attorneys General, answers **DEFENDANTS MONICA LORTZ AND CINDA SANDIN'S RESPONSES TO THE PLAINTIFFS' FIRST REQUEST FOR ANSWERS TO INTERROGATORIESTO DEFENDANTS** as modified and limited by United States Magistrate Judge Kevin S.C. Chang's Order of December 7, 2005, and attaches these answers hereto. Answers from the remaining defendants will be transmitted as they are received by counsel.

DATED:   Honolulu, Hawaiʻi, March 10, 2006.

_____
JOHN M. CREGOR, JR.
Deputy Attorney General
Attorney for Defendants
DEPARTMENT OF PUBLIC
SAFETY, STATE OF HAWAII,
JAMES L. PROPOTNICK, FRANK
LOPEZ, EDWIN SHIMODA,
NOLAN ESPINDA, ERIC
TANAKA, RANDY ASHER, SGT.
SAIA FINAU, CINDA SANDIN,
MONICA LIRTZ, CHERYL
ZEMBIK, LYLE KANOA, G.
SHERIDAN, and DAVID APAO

181722_1.DOC

# RESPONSES TO INTERROGATORIES FROM DEFENDANT MONICA LORITZ

1. Please state name, position and duties.

   Answer:

   **Monica Lortz, UTM/MOD 1**

   **Oversee management of Module 1 operations.**

2. Were you trained in regards to prison gang management and control what training or instructions did you have concerning policy and procedures concerning prison gang members. When were you trained what was involved and how long was the training or instruction.

   Answer:

   **No**

3. Were you specifically trained or instructed in regards to the challenged housing practice of separating prison gangs form rival prison gangs and housing them in certain areas of Halawa prison (Quads) to what extent did you understand that this housing practice could be applied (in other words was it allowed to house a regular inmate (non-gang) member in with separated prison gang members.

   Answer:

   **No**

4. How long has the practice of separating rival prison gangs been in effect and what are the reasons for separating the rival prison gangs?

   Answer:

   **Don't know how long, but have the ability to separate any inmate for security reasons.**

5. Did you know that a regular inmate (non-gang member) could be housed with separated prison hang members (if answer is Yes what do you think about this practice?)

   Answer:

   **Housing any inmate is dependent on space/circumstances.**

6. What is a Quad (how many inmates in a Quad) (about how many if exact number is not known).

   Answer:

   **Quad is a sub-division of a housing unit; number is dependent upon location.**

7. How many separated prison gang members were in a Quad at one time (about how many).

   Answer:

   **Don't know.**

8.  How many separated prison gang members were allowed in a Quad.

    Answer:

    **Dependent on space/circumstances.**

9.  What Quads in Halawa Medium and High Security Facility did separated prison gangs occupy?

    Answer:

    **Don't Know.**

10. Since rival gangs were separated why didn't they separate regular inmates (non-gang) from separated prison gang members? Do you think they should have been separated (why or why not)?

    Answer:

    **All inmates have the potential to pose a danger to security; no opinion.**

11. Do you know of any regular inmates that were victimized when housed with separated prison gang members (describe).

    Answer:

    **No.**

3

181722_1.DOC

12. What are the policies or practices concerning the housing of a regular inmate with separated prison gangs?

    Answer:

    **Housing of all inmates is determined by space availability/circumstance.**

13. How many regular inmates (non-gang) requested protective custody for the last 5 years because they were beaten, threatened, or extorted by separated prison gang members. (some – a lot – plenty – a whole lot)?

    Answer:

    **Don't know.**

14. How many Grievances for the last 5 years did you receive or know of that complained of prison gang members threatening, extorting, or assaulting inmates (some – a lot – plenty – a whole lot)?

    Answer:

    **Don't know.**

15. Does the separation of rival prison gang members exist in both Medium and High Security Facilities? Who authorizes? This when and how long did this exist?

    Answer:

    **The separation of any inmate from another exists and is authorized by the Administration for as long as they determine.**

4

16. Who do you know of including yourself if involved specifically authorized, allowed, approved of the practice of separating rival prison gangs and then housing a regular inmate in with them. When did you come to know this?

    Answer:

    **The authorization of separating any inmate is determined and approved by the Administration; throughout the course of my work.**

17. When was the prison gang intelligence unit and task force created? What is there function? What do they accomplish? Who is in charge? And how many make up the task force?

    Answer:

    **Don't know.**

18. Who's decision was it to create the gang task force intelligence unit. Why was it created or why do you think it was created, when was it created?

    Answer:

    **Don't know.**

19. Are prison gangs a threat and danger to public order and safety (if Yes why if no why).

    Answer:

5

181722_1.DOC

20. Are prison gangs a threat and danger to regular inmates (if Yes why if no why).

    Answer:

    **All inmates have the potential to be a threat/danger to public order.**

21. What kind of screening procedures and classification procedures were used to determine compatibility between regular inmates (non-gang members) and separated prison gang members that they were ordered to be housed with them.

    Answer:

    **Screening is determined by space/circumstances; classification strictly determines custody designation.**

22. Do you know of any abuses in the housing practice such as guards putting a regular inmate or gang member in with separated prison gang members so he will be beaten (names need not be mentioned but may be) describe as best you can.

    Answer:

    **No.**

23. What is the nature and character of prison gangs? What is there purpose, goals, agenda?

    Answer:

    **Don't know.**

24. Do you know what the right to safe custody policy says. What do you think it means.

    Answer:

    **Not aware of a specific policy by this name, however, all inmates are afforded the right to safe custody.**

25. Are you aware that you have a duty to protect prisoners from a foreseeable harm. Explain what your understanding of this is?

    Answer:

    **Yes, again staff make all reasonable attempts to shield all inmates form foreseeable harm.**

26. Are prison gangs dangerous and who are they a danger to? Please describe.

    Answer:

    **All inmates have the potential to pose a danger to others.**

27. Are prison gangs a threat to prison security? If Yes why? If no why?

    Answer:

    **All inmates have the potential to pose a danger to prison security.**

28. Do you think that housing a regular inmate (non-gang) with 15 separated prison gang members is dangerous to that regular inmate? If Yes why? If no why?

    Answer:

    **No, because all inmates have the potential to pose a danger to another.**

29. [missing]

30. How many inmates have been injured in gang violence that you know of? Are there any specific incidents that come to mind.

    Answer:

    **Don't know.**